MRS. PATRICIA M. BALLEW, Administratrix with the will annexed of the Estate of JOHN O. BALLEW, Deceased, Plaintiff-Defendant-in-error, v. JOHN O. BALLEW, JR., et al., Defendants-Plaintiffs-in-error.— 309 S. W. (2d) 125.

Middle Section. June 28, 1957.

Petition for Certiorari denied by Supreme Court December 6, 1957.

King & Fuston, Chattanooga, M. E. Derryberry, III, Nashville, for plaintiffs in error.

James C. Havron, Nashville, for defendant in error.

HICKERSON, J. This is a will contest. Mrs. Patricia M. Ballew is the proponent and sole beneficiary of the script under attack, except three small bequests of $5 each to children of Mr. John O. Ballew by a former marriage. These terms will be used in this opinion: will for the script under attack; testator for John O. Ballew; proponent for Mrs. Patricia M. Ballew; and contestants for the children of John O. Ballew by a former marriage.

The trial judge entered judgment upon a directed verdict in favor of the will.

Three errors are assigned. One question is determinative in this Court: Does the record contain evidence which would require the submission of the credibility of proponent and the two subscribing witnesses to the jury? If not, and we must hold, as a matter of law, that the testimony of these witnesses is true; we concur in the conclusion of the trial judge that the formalities required by the statute relating to the execution of wills have been substantially met in this case. T. C. A. secs. 32-101 to 32-111.

In considering whether the trial judge erroneously directed a verdict for proponent, we shall be governed by the rules stated in this Court in Poole v. First National Bank of Smyrna, 29 Tenn. App. 327, 196 S. W. (2d) 563.

Contestants contend that the following facts, supported by material evidence in the record, cast such doubt concerning the execution of the will that the question of its execution should have been submitted to a jury:

1. Testator had three children by a former marriage who were on friendly affectionate terms with their father.

2. Testator and his wife (proponent) with two friends, Nina Temple and her husband, Floyd Temple, the attesting witnesses, went out to see where two girls were drowned in a river. It was late in the afternoon on March 25, 1955. They went in the car of testator. He parked their car and they walked down to the river where the girls were drowned. Upon returning in their car, testator and proponent were sitting on the front seat. Mr. and Mrs. Temple were on the rear seat. Testator remarked, in substance, that death could come to any one just as suddenly as it had come to the two girls who were drowned. Then he said he had no will and that he was going to make one right there. He looked for paper and could find only the back of a folding check book. Upon this check book (original in the record), testator executed this will:

"March 25, 1955

"Will of J. O. Ballew.

"I, J. O. Ballew, being of sound mind, do make this last will and testament, I hereby will all of my money, retirement pay, personal and real property and anything I may inherit from Mr. J. W. Ballew to my wife, Patricia M. Ballew, with the exception of $5.00 to

each of my children J. O. Ballew, Jr., Carolyn Ballew, Boby Ballew

> "J. O. Ballew
> "3rd Nat. Bank Bldg.
> "Nashville 3, Tenn.
>
> "J. O. Ballew
>
> "J. O. Ballew

"Nina Temple 1605 Jones Ave.
"Floyd L. Temple 1605 Jones Ave."

3. At testator's request, Nina Temple wrote the will word for word as he dictated it. Then she handed the will to him in the front seat and he signed it and returned it to Mr. and Mrs. Temple with the request that they sign it as witnesses, which they did.

4. Testator wrote his name three times at the bottom of the back of this check book. He, also, listed Third National Bank as his address. Third National Bank had not been his address for about six years. Some one struck out part of this address, apparently the office number of the building.

5. Testator was a good careful business man, but he never thereafter executed a will in a more formal and conventional manner.

6. In writing his name three times testator barely left room at the bottom for the signatures of the witnesses.

Testator died two months and four days after the execution of the will. His health had been good and he had no reason to expect death. His death was very sudden. He was in his yard at home when he was stricken. At the time he was stricken he told a neighbor that he was going

to die and that he had no will and he wanted his wife, proponent, to have what he had.

7. Three days after the death of testator, his widow, proponent, qualified as administratrix of his estate. In so doing, she swore that her husband left no will.

8. Proponent called a son of testator three times in about one month concerning his father's estate. First, she told this son his father left no will. Second, she told this son (about one week later) that his father left an oral will giving her all he had. Third, she called this son a few days later to tell him she had found a written will which his father had left, the same being the will in question.

9. Proponent did not tell the County Judge, testator's children, or any one else about a written will of her husband, although she testified she had witnessed the execution of the will under the strange circumstances related above.

10. Testator customarily wrote his name two or three times on any paper at hand to test the ink in the pen before he would sign his name to any instrument. It is the theory of contestants that testator used the back of this old check book to do this practice writing; that he never knew or thought that he was executing a will; and that proponent took advantage of these three signatures at the bottom of the check book to write a will above the signatures and thereby try to get the entire estate for herself. Contestants say this was the only reasonable explanation for the three signatures at the bottom of the purported will.

An examination of the will itself tends to support this theory of contestants. Applying the rule that the Court

must take the strongest view of the evidence against a motion for directed verdict and all reasonable inferences therefrom and discard all countervailing evidence, the jury might have reasoned in this fashion: proponent found this old back to the check book with the name of the testator written three times on it at the bottom, then had the will written above the three signatures. It is noted that the will is entirely upon the upper one-half of this back to the check book.

█ Where the testimony of any witness appears to be incredible under proved circumstances in the light of the experience of reasonable men, a jury question is presented to determine the credibility of such witness. Dale v. Thomas H. Temple Company, 186 Tenn. 69, 208 S. W. (2d) 344; Pickard v. Berryman, 24 Tenn. App. 263, 142 S. W. (2d) 764; Jamison v. Metropolitan Life Insurance Company, 24 Tenn. App. 398, 145 S. W. (2d) 553.

In Pickard v. Berryman, supra [24 Tenn. App. 263, 142 S. W. (2d) 770], this Court said:

"In considering and weighing circumstantial evidence, which we must now proceed to do in the case before us, it is sometimes helpful from a clarifying standpoint to regard the circumstances found to be proven as corresponding to witnesses on the stand, and the inferences to be drawn therefrom as corresponding to the testimony of such witnesses. In short, the proven circumstances, instead of the living witnesses, may be sometimes helpfully regarded as speaking, and the inferences to be drawn therefrom as what they say."

In Jamison v. Metropolitan Life Insurance Company, supra [24 Tenn. App. 398, 145 S. W. (2d) 556], this rule is stated:

"A statement of a fact by a witness, however positively made, should be weighed in connection with all the circumstances of the case, and if these circumstances show the untruthfulness of the testimony it should be disregarded. Nashville, Chattanooga & St. Louis Railroad v. Justice, 5 Tenn. Civ. App. 69, 71; Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438."

██ Any fact may be proved by direct evidence, circumstantial evidence, or a combination of the two. Credibility of a witness presents a question for the jury. Davidson v. Gilreath, 38 Tenn. App. 291, 273 S. W. (2d) 717; Finks v. Gillum, 38 Tenn. App. 304, 273 S. W. (2d) 722.

██ A well-connected train of circumstances may be more convincing than positive evidence of a witness. Phillips v. Newport, 28 Tenn. App. 187, 187 S. W. (2d) 965.

██ We think the circumstantial evidence in the case on trial is sufficient to make an issue on the credibility of the witnesses for proponent. Having that view, the judgment must be reversed and the cause remanded for new trial.

It seems that the distinguished trial judge entertained, to a considerable extent, the views we have expressed herein, for he said:

"And I will say another thing, under the facts of this case, as developed, to my mind, there are some strong suspicious circumstances; but while I have in my own mind the suspicions, I had better stop right there now."

Again, the trial judge said:

"The Court: Jury, you heard all of the testimony in this case. I will say to you that, very frankly, there are some circumstances and things connected with this will that arouse my suspicion, but the Court may have suspicions and the jury may have suspicions. There must be some testimony, positive testimony, upon which suspicions are predicated and based."

The trial judge further said:

"Under a contest, and under the law and facts in this case, it is the duty of the court to pass on this paper itself, and the court holds as a matter of law that this will does conform to the requirements, and that is my reasoning to you, gentlemen, but while I follow the law, still I very frankly have stated that in my opinion there are some questions that arise as to this will."

We agree with the trial judge that this will on its face conforms to the requirements of the statute which governs the execution of wills; but that is not the problem before the Court. The question is one of fact: Was the will executed according to the testimony of proponent's witnesses and herself? We think the circumstances surrounding the execution of this will present a jury question on the credibility of proponent's witnesses; and

that the trial judge committed reversible error when he held, as a matter of law, that the testimony of proponent's witnesses was true. He should have submitted the question of credibility to the jury.

Reverse the judgment of the Circuit Court and remand the cause to the Circuit Court for new trial consistent with this opinion. Let the costs of the appeal follow the judgment here.

Felts and Shriver, JJ., concur.