JAMES BRADFORD, Plaintiff in Error, v. JOSE-PHINE BRADFORD, Defendant in Error.—364 S.W. (2d) 509.

Eastern Section. December 4, 1962.

Certiorari Denied by Supreme Court February 7, 1963.

Tom Taylor, Athens, and Charles C. Guinn, Etowah, for plaintiff in error.

Kramer, Dye, McNabb & Greenwood, John B. Rayson, Knoxville, Wallace D. Hitch and Herman Gregory, Athens, for defendant in error.

McAMIS, P. J. This is a will case involving the validity of the purported last will and testament of Ezekial C. Bradford who died in October, 1957, at the age of 71. The case has followed a checkered course having been four times tried before a jury and heard on a former appeal both by this Court and the Supreme Court.

Following the remand from the Supreme Court the case was tried the fourth time resulting in a verdict and judgment in favor of the will. From that judgment the contestant has prosecuted the present appeal.

The assignments are that the Court erred (1) in admitting the will in evidence without proper and sufficient proof that it was duly executed and published by the deceased and in directing the jury to find affirmatively on that issue; (2) that the Court erred in striking from contestant's plea the averments as to the value of the estate and (3) that the verdict was erroneously received in the form presented.

The proponent is the widow of the deceased, having married him in May, 1955. Under the terms of the will she receives the entire estate except that contestant and a daughter, both of whom are children of former marriages, receive under the will one dollar each. The questions will be considered and disposed of in the order above indicated.

To the declaration in the Circuit Court propounding the will the defendant-contestant filed a plea averring that his father did not sign the paper offered for probate; that he was of weak or unsound mind and that the execution of the purported will, if signed by the deceased, was procured by fraud and undue influence exerted by proponent.

The proof shows that the deceased for a number of years lived with his brother, Bud, on a farm of approximately 256 acres in McMinn County. We infer that upon the death of Bud the deceased acquired the farm with all cattle and farm equipment. He continued to live on and operate the farm. After the death of Bud, contestant

lived for a time with his father but there is evidence that when the deceased refused to execute a deed to the farm to contestant he left.

Deceased had known proponent from early life and, after a short courtship, married her at her home in Knoxville in May, 1955. They lived together on the farm until his death, a period of more than 2 years.

Judge Jack Johnson, a prominent attorney of Athens, testified that he had known the deceased for many years and had acted as his attorney in drawing a previous will favoring contestant and that a short time prior to the execution of the will here in question the deceased consulted him about changing the first will, explaining that he was about to be married. Judge Johnson advised him to wait until after his marriage before changing his will. After the marriage, Judge Johnson drew the will offered for probate, the terms of which are stated above.

As to the execution of the will and that the deceased was of sound mind the testimony of Judge Johnson is clear and unequivocal. He testified that after typing the will he read it to the deceased and then called in his secretary, Mrs. Wilson, and, at the request of the deceased, he and Mrs. Wilson witnessed the will in his presence and in the presence of each other.

Mrs. Wilson, called as a witness for proponent, could not remember the execution of a will by Ezekial Bradford as related by Judge Johnson. She remembered working in Judge Johnson's office and positively identified the signatures appearing on the will as witnesses as the genuine signatures of Judge Johnson and herself.

Following the signature appearing to be that of Ezekial C. Bradford and above the signatures of Judge Johnson and Mrs. Wilson there appears the following:

"Signed by the said Ezekial C. Bradford as and for his last will and testament in the sight and presence of us, the undersigned, who, at his request, and in his sight and presence and in the sight and presence of each other, have subscribed our names as attesting witnesses this the day and date above written."

On the foregoing proof the Court admitted the will in evidence for the consideration of the jury.

█ Contestant offered no proof in contradiction of this certificate or the testimony of Judge Johnson that the will was signed by the deceased and properly witnessed by him and by Mrs. Wilson unless it be evidence that Ezekial C. Bradford was unable to read and write. This evidence, consists of the testimony of contestant, the deceased's daughter, a brother of deceased and others that he could not learn in school and could not read and write or that he had never been seen doing so. None of these witnesses, however, testified that on the date of the execution of the will or at any time in his life he could not sign his name. The brother, a witness for contestant, finally admitted that he had seen receipts or checks he had signed but said that he usually signed by making his mark. It is a matter of common knowledge that a person who can neither read nor write may be able to sign his name.

█ We do not think the foregoing testimony was sufficient to make the issue of the execution of the will one for the jury and that the Court correctly determined

as a matter of law that the paper writing offered for probate was duly executed by the deceased as his will. There was no error in, first, admitting the will in evidence and then directing the jury at the close of contestant's proof to find affirmatively on the issue of the execution of the will, overruling, at the same time, proponent's motion to direct a verdict in her favor on the remaining issues of undue influence and lack of testamentary capacity.

The inability of Mrs. Wilson to recall witnessing the will, in view of other positive and uncontradicted evidence, was not sufficient to make the execution of the will a question of fact for the jury. Cases cited in contestant's brief and hereinafter discussed are not to the contrary.

In Fann et al. v. Fann et al., 186 Tenn. 127, 208 S.W. (2d) 542, the subscribing witnesses had signed an attestation certificate showing the execution of the will to be in every respect in compliance with the statute. However, on the trial the attorney who prepared the will and was present when it was signed and one of the attesting witnesses could not say positively that both witnesses were present at the same time. The second subscribing witness testified positively that he did not sign in the presence of the other witness. The recitals of the attestation clause were held inconclusive in view of the positive testimony of one of the subscribing witnesses that the requirements of the statute had not been followed. In that case probation was denied on the ground that one of the witnesses to the will positively denied an essential fact and that the proof of compliance with the statute was not ''clear and full'' as required by our cases

since there was "practically no evidence" to support the recitals of the certificate.

The facts of this case are just the reverse. The positive testimony of one subscribing witness conforms to the recitals of the attestation clause while the testimony of the other subscribing witness contains no refutation of the recitals of the certificate and she identifies her signature and that of her co-signer as being genuine.

Basing its holding on Beadles v. Alexander, 68 Tenn. 604, the Court in the Fann case held that the recitals of the attestation clause give rise to a legal and controlling presumption of regularity and it is only where there is positive testimony to the contrary by a subscribing witness or otherwise that the question is for the jury.

In Ballew v. Ballew, 43 Tenn.App. 340, 309 S.W.(2d) 125, also cited in contestant's brief, the purported will was on the back of a check book and although according to proponent's testimony it was executed in her presence she stated under oath in qualifying as administratrix that her husband had left no will and there was proof of other inconsistent statements by the proponent. There was no attestation clause signed by the two subscribing witnesses. Under these circumstances it was held that the credibility of the proponent and the two attesting witnesses should have been left to the jury and the action of the Court in directing a verdict for the will was reversed. The circumstances of this case as shown are quite different.

Needham v. Doyle, 39 Tenn. App. 597, 286 S.W.(2d) 601, also cited, is not in point. In that case the action of the trial court in directing a verdict against the will was reversed on the holding that a jury question was

presented under the evidence set out in the opinion as to whether the attesting witnesses were aware that they were being requested to witness a will. This Court found there was a conflict in the evidence on that question requiring submission to the jury.

"Where the attestation clause states that the requirements of the statute were complied with, and the signaures are shown to be genuine, and there are other corroborating circumstances, the will may be established although the witnesses testify that they remember nothing of the transaction." Pritchard Wills and Estates, Phillips, Section 336.

The probate or proof of the execution of a will does not depend upon the memory of the attesting witnesses as to the particulars attending its execution. 57 Am. Jur. 596, Wills, Section 906.

The question is made in contestant's brief that, in view of the proof that the deceased was in ill health, of weak mind and illiterate, the Court erred in not placing the burden of proof upon proponent to show that he understood that he was performing a testamentary act when he signed the will. We can not see that the question of the burden of proof is of importance. All of the proof shows that the deceased consulted Judge Johnson for the purpose of having him draft his will and told him how he wished to dispose of his estate even to the point of insisting that each of his two children be given one dollar although Judge Johnson advised him that was not necessary. Since all of the proof shows the deceased knew he was performing a testamentary act the question of the burden of proof becomes moot. When the Court admitted the will in evidence there was no evidence to the

contrary. Nor was there any evidence of weakness or unsoundness of mind.

There was no error in admitting the will in evidence and directing the jury to find for proponent on the question of the due execution of the will. (As shown, the other issues were submitted to the jury and resolved against contestant. It is not insisted that the verdict is unsupported by material evidence and there is no complaint as to the charge of the court or the admission or rejection of evidence.)

█ The second question posed by the assignments of error relates to the action of the Court in striking from contestant's plea the averment that the value of the estate acquired by proponent under the will was from $25,000.00 to $40,000.00.

We think the better view is that where the jury must pass upon the question of testamentary capacity it is competent for either party to show the size and complexity of the estate. The capacity to dispose of a few items by a simple will may not be adequate to the full comprehension necessary to make a complicated will requiring the remembrance and comprehension of many details incident to disposing of a large estate. As to how and to what extent the parties should be allowed to develop these matters must be left largely to the discretion of the trial court. Obviously, to permit proof of the value of numerous properties belonging to the estate would tend greatly to confuse the issues and should not be permitted.

In this case, contestant was allowed to show that the decedent owned 256 acres of land, a Buick automobile, a herd of cattle and that his farm was well equipped with

machinery. We can not say the Court abused its discretion in refusing to allow contestant to plead and prove the value of these properties. Certainly, there is no showing of prejudice.

■ The final question relating to the form of the verdict can best be understood by quoting from the record what occurred when the jury returned to report its verdict:

"The Court: How do you find?

"Foreman: We go along with the will.

"The Court: You find in favor of the will?

"Foreman: Yes."

We think "we go along with the will" can only be construed to mean that the jury found in favor of the will. However, if there was any uncertainty or ambiguity sound practice required that it be removed before the jury was allowed to disperse. We think the Court acted properly in removing from all doubt the intention of the jury by asking the simple question shown by the record and that there was no error in accepting the verdict as a finding for the will.

Finding no error, it results that all assignments are overruled and the judgment sustaining the will affirmed. The cause will be remanded for proper certification to the County Court of McMinn County. Costs of appeal are taxed to plaintiff in error.

Avery, (P. J. W. S.), and Carney, J., concur.