IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2001 Session

## The ESTATE OF DAVID S. BROCK, SR., by WANDA BROCK YADON, Executrix and Surviving Spouse of David S. Brock, Sr., v. TOIVO E. RIST, M.D., and DERMATOLOGY ASSOCIATES OF KNOXVILLE, P.C.

Direct Appeal from the Circuit Court for Knox County
No. 1-390-98     Hon. Dale C. Workman, Circuit Judge

FILED JULY 10, 2001

No. E2000-02459-C0A-R3-CV

A jury returned a verdict for defendants in medical malpractice action which was approved by the Trial Judge. On appeal, plaintiff seeks new trial on the grounds there is no material evidence to support the verdict and the Trial Judge erred in refusing to permit two of plaintiff's experts to testify and allowing defendants to offer in evidence a portion of an expert witness's deposition taken for discovery. We affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Donna Keene Holt and David E. Waite, Knoxville, Tennessee, for Appellant.

Douglas L. Dutton, Albert J. Harb and Amy V. Hollars, Knoxville, Tennessee, for Appellees.

## OPINION

In this medical malpractice action, a jury returned a verdict for the defendants, and plaintiff has appealed.

On appeal, plaintiff argues there is no material evidence to support the jury verdict, and the refusal by the Trial Judge to permit certain of plaintiff's witnesses to testify, along with the Court's allowing defendants to offer certain expert testimony from a discovery deposition over the

objection of the plaintiff, constitute reversible error and require a new trial.

Where a trial Judge, sitting as thirteenth juror, approves a jury verdict, our review is limited to determining whether there is any material evidence to support the verdict. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994); *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999). We conclude, from our review of the record, that material evidence supports the jury verdict in favor of the defendants.

Defendant, Dr. Toivo E. Rist, removed a mole from the deceased, David Stephan Brock, Sr., on March 25, 1987. Brock subsequently sought treatment on April 26, 1988 with plastic surgeon Dr. Dean Kleto. Dr. Kleto performed further surgery and reconstructive surgery, and tissue samples were sent to Dr. Bruce Bellomy for pathology analysis. Dr. Bellomy consulted with Dr. Milton Okun, a dermatopthaologist, who found features of the sample were suggestive of melanoma but he did not offer a definitive diagnosis. After receiving Dr. Bellomy's final pathology report, Dr. Kleto preformed a wide re-excision of the lesion of Brock Sr.'s nose on June 22, 1988. The pathology report on the tissue from that surgery found "minute focus of residual atypical nevus cells, consistent with malignant melanoma in situ, showing complete margins of excision." Brock died on April 10, 1991, from a matastatic melanoma of the stomach and liver.

Dr. Rist's treatment notes from his March 25, 1987 appointment with Brock states: "lesion right side of nose area, R/O pigmented BCC, deadened, transected, desiccated." Dr. Rist testified that the term "transect" is identical to "shave biopsy" and that this "shave" is of a "sufficient depth to capture a dysplastic nevus, [and] it's also sufficient depth to capture a melanoma." There are mechanisms by which a doctor could remove only a layer of skin the thinness of the epidermis, but Dr. Rist testified that he did not have the equipment necessary to perform this thin shave. The knife that he used was several times thicker than the depth of the epidermis. He further testified that when he shaves a lesion deep enough to diagnose a dysplastic nevus, that shave is of such a depth to also diagnose malignant melanoma in situ because melanoma starts in the top layer.

He sent a tissue sample for examination to Dr. James L. O'Quinn, a dermatologist in Augusta, Georgia. Dr. O'Quinn's pathology report noted the presence of a central dermal component, with a thinner shoulder surrounding it. This description is consistent with Dr. Rist's testimony that he used a deep shave technique which reached down into the dermis and produced a sample that was thicker in the middle than on the sides. Wanda Brock Yadon testified that after some healing had occurred, there was a depression on the side of the deceased's nose, which is consistent with the deep shave technique.

Plaintiff contends that Dr. Rist's testimony about his customary practice was "merely" circumstantial evidence, and as such "it is not looked upon favorably by the law, which prefers direct evidence." Plaintiff argues that all the "direct, positive and unimpeached testimony of witnesses who were testifying based on actual recall, direct observation and personal knowledge were all to the effect that the mole was still present on the side of Mr. Brock's nose after the treatment by Dr. Rist."

Contrary to Plaintiff's contention, circumstantial evidence may be used to prove any material fact. See *Law v. Louisville & N.R. Co.*, 170 S.W.2d 360, 363 (Tenn. 1943); *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 944 (Tenn. Ct. App. 1984). In certain cases, our courts have recognized that a well-connected train of circumstances may be more convincing than direct evidence on the same matters. *Knapp* (citing *Ballew v. Ballew*, 309 S.W.2d 125, 128 (Tenn. Ct. App. 1957)).

Dr. Rist's testimony based upon his notes from the March 25, 1987 procedure and his routine practice, states that he removed the entire lesion clinically from Mr. Brock. He further testified that he absolutely tries to remove the entire lesion and not just a part. This testimony constitutes material evidence supporting the jury's verdict.

Plaintiff contends that the Trial Court erred in excluding relevant medical evidence in support of plaintiff's case and also in allowing defendants to read into evidence the deposition of Dr. O'Quinn.

The admission or exclusion of evidence is within the sound discretion of the trial court. *See Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn. 1998); *White v. Vanderbilt University*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999). Discretionary decisions require conscientious judgment and they must take the applicable law into account and must also be consistent with the facts before the court. S*ee White* and *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). A trial court's discretionary decisions should be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives. *White*, 21 S.W.3d at 223. We permit discretionary decisions to stand if reasonable judicial minds can differ concerning its soundness. See *White*, 21 S.W.3d at 223, *Overstreet*, 4 S.W.3d at 709.

An Agreed Scheduling Order was entered on May 5, 1999, setting out specific discovery and motion deadlines in this case. Pursuant to this Order, plaintiff was to name all expert witnesses and answer the defendant's interrogatories on or before June 11, 1999. Both parties were allowed to "supplement the testimony of their experts" up until September 1, 1999. Plaintiff answered Defendants' Interrogatories on June 11, 1999, naming Dr. Bandeian, Dr. O'Quinn, and Robert Bohm, as her experts.

On July 27, 1999, Plaintiff filed a supplemental Tenn. R. Civ. P. Rule 26 disclosure naming Dr. Okun as an expert witness. She then filed a second supplemental Rule 26 disclosure on August 26, 1999, naming Dr. Safer as an expert witness. Defendants moved to strike these two experts on the basis that they were named after the deadline imposed by the Scheduling Order. The Trial Court granted this motion and disallowed the use of any expert testimony by Dr. Okun and Dr. Safer.

Tennessee Rule of Civil Procedure 26.02 allows a party through interrogatories to

require the other party to identify any expert witnesses the other party expects will testify at trial along with the substance of that expert's testimony. In addition, a party is under a duty to "seasonably" supplement his response to a request for the identity of expert witnesses expected to be called at trial. Tenn. R. Civ. P. 26.05.

Under the provisions of the Rules, various sanctions are provided for when a party abuses the discovery process, and the trial judge is clothed with the authority to take appropriate corrective action against a party for discovery abuse. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. Ct. App. 1988) (citing *Strickland v. Strickland*, 618 S.W.2d 496, 601 (Tenn. Ct. App. 1981)).

In *Lyle,* the Court recognized that excluding the testimony of an expert witness may be an appropriate sanction, and listed four factors that the trial court should consider in determining the appropriate sanction. *Id.*, at 699. These factors are (1) the explanation given for the failure to name the witness; (2) the importance of the testimony of the witness, (3) the need for time to prepare to meet the testimony; and (4) the possibility of a continuance. *Id.*

Applying these factors, it is clear that the Trial Judge did not abuse his discretion in excluding the expert testimony of Drs. Okun and Safer. Plaintiff explained that her failure to name the experts earlier was due to the fact that she "just needed to replace one, wasn't sure about another one, and I need a dermatologist." Plaintiff's counsel stated that she had sent records to a dermatologist prior to the deadline but was having communication problems and was unable to timely secure a expert dermatologist for trial. No explanation was given as to why these two witnesses were necessary, as she had already named Dr. Bandeian as an expert on the standard of care. The naming of additional experts two months prior to trial caused the defendants to alert the Court to a possible need for defendants to obtain additional experts. The Plaintiff concedes that a continuance would not have been desirable because of the long time that had passed since the initial law suit was commenced. However, plaintiff argues that defendant was not prejudiced by the late-naming of Dr. Okun as an expert because he had previously been listed as a witness. However, Dr. Okun had been listed as someone with knowledge of the facts of the case, and that previous disclosure made no mention that Dr. Okun would be offered as an expert, as well. Plaintiff also argues that the agreed Order allows her to supplement her list of witnesses until September 1. However, that Order simply allows her to supplement "the testimony" of her experts and does not authorize adding additional experts.

We conclude the Trial Court properly acted within its discretion in excluding the expert testimony of Drs. Okun and Safer. *See Buckner v. Hassell*, 44 S.W.3d 78 (Tenn. Ct. App. 2000). In answering defendants' interrogatories, plaintiff identified Drs. Okun, Kleto and Kubota as witnesses in the case, but did not designate them as expert witnesses. The Trial Court excluded certain testimony of these physicians on the ground that the testimony represented opinions by experts who had not been timely identified as Rule 26 experts for the Plaintiff. The Trial Judge is supported in his rulings by *Bucker* at p. 84. We affirm the Trial Court's ruling on this issue.

However, plaintiff argues the testimony of Dr. Okun and Kubota were wrongfully

excluded concerning the pathology and progression of a melanoma in general, and did not specifically address a review and diagnosis of Brock's lesion.  The excluded testimony asked Dr. Okum about the criteria for pathologists with respect to what should be labeled a dysplastic nevus versus melanoma in situ.  This clearly asks for Dr. Okun's expert opinion.  Likewise, the excluded testimony of Dr. Kleto involved matters of expert opinion in that he testified as to the standard of care, from a surgeon's perspective, for removing a dysplastic nevus.  For the same reasons, Dr. Kubota was precluded from testifying as to the standard of care from a medical oncologist's perspective, for removing a dysplastic nevus.

Finally, it is argued that the Court erred in allowing the defendants offering in testimony from Dr. O'Quinn's discovery deposition.

Dr. James O'Quinn was the pathologist in Georgia who examined the slides sent by Dr. Rist.  Defendant named Dr. O'Quinn as a witness with knowledge of the facts of the case in the original filing of the case, and plaintiff took Dr. O'Quinn's discovery deposition on February 9, 1995.  In defendants' response to plaintiff's first set of interrogatories in 1998, defendants included Dr. O'Quinn in the list of possible expert witnesses, stating that deposition taken in February 1995 may be read into evidence.  Plaintiff also identified Dr. O'Quinn as a Rule 26 expert witness in its own case.  At trial, the Court allowed defendant to read from the deposition of Dr. O'Quinn over the objection of plaintiff, and without making any showing that Dr. O'Quinn had ever been asked to appear live at  trial or give a deposition for evidence.

Rule 32 of the Tennessee Rules of Civil Procedure governs the use fo depositions in court proceedings.  The Rule allows the use of a deposition against any party who was present or represented at the taking of the deposition in accordance with the following:

> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing or is out of state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena or the witness is exempt from subpoena to trial under T.C.A. § 24-9-101; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.  Notwithstanding the foregoing provisions, depositions of experts taken pursuant to the provisions of Rule 26.02(4) may not be used at the trial expert to impeach in accordance with the provisions of Rule 32.01(1).
>
> (4) If only part of a deposition is offered in evidence by a party, an adverse party may require the offering party to introduce any other part which ought in

fairness to be considered with the party introduced, and any party may introduce any other parts.

Tenn. R. Civ. P. 32.01.

Dr. O'Quinn was a witness with knowledge of facts of the case, and was not merely an expert obtained to render an opinion in the case. He resides in Georgia, and meets the distance or location criteria of Rule 32.01(3)(B). Accordingly, to the extent that Dr. O'Quinn testified via deposition as to matters relating to his treatment of Mr. Brock, the use of the deposition at trial was allowable. The evidence admitted concerned Dr. O'Quinn's knowledge of the facts as gained as an actor in the treatment of Mr. Brock, but the Court excluded other portions of the deposition in which O'Quinn was offering expert opinion or speculation. We conclude the Trial Judge properly allowed the portions of the deposition to be read into evidence.

For the foregoing reasons, we affirm the judgment of the Trial Court and remand and assess the cost of the appeal to appellant.

_____
HERSCHEL PICKENS FRANKS, J.