IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2001

## CHARLES W. MOORE, ET AL. V. CLYDE GREEN, ET AL.

**Appeal from the Probate Court for Davidson County**
**No. 99P-1461  Frank G. Clement, Jr., Judge**

**No. M2000-03203-COA-R3-CV - Filed March 18, 2004**

This appeal involves a dispute concerning the estate of Nellie K. Ellis.  The plaintiffs, Charles W. Moore, Linda Moore Maggart (Executrix of the estate of Herschel Moore, deceased), Ray Swing, Juantia Swing Sircy, Jeane S. Pennington, and James E. Swing, contested the decision to admit the will to probate.  Their position is that the will is invalid because of a train of circumstances which shows the will was (1) not properly executed, (2) the testator lacked sufficient mental capacity, or (3) the beneficiary exercised undue influence over the testator.  The trial court granted the defendant Clyde Green summary judgment, holding that the will was properly executed and that the plaintiffs did not adequately prove undue influence or lack of mental capacity.  We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

JOHN J. MADDUX, JR., Sp. J. delivered the opinion of the court, in which WILLIAM B. CAIN, J., and PATRICIA J. COTTRELL, J. joined.

Grant W. Smith, Goodlettsville, Tennessee, for the appellants Ray Swing, Juanita Swing Sircy, Jeanne Swing Pennington, and James Edward Swing, and Homer R. Ayers, Goodlettsville, Tennessee, for the appellants Charles W. Moore and Linda Moore Maggart, Executrix for the Estate of William Herschel Moore, a/k/a Herschel Moore, deceased.

William H. Lassiter, Jr. and Jordan S. Keller, Nashville, Tennessee, for the appellee Clyde Green.

**OPINION**

*I. Factual Summary*

The decedent Nellie K. Ellis executed her last will and testament on January 6, 1989.  In it she bequeathed to Clyde Green, the defendant, all of her capital stock in Ellis Funeral Home, Inc.

including certain real property owned by the corporation. This act was consistent with the decedent's previously stated intention to give the funeral home business to the defendant and his wife, Imogene Green, in appreciation of their forty-year friendship with her, their care for her, and their many years of employment at Ellis Funeral Home.

On that January day Mrs. Ellis executed her will while in the presence of two witnesses. The witnesses were her attorney Walter S. Clark, Jr. and the late Judith Crockett. Mr. Clark read the will to Mrs. Ellis before she signed it. It contained a proper attestation clause. The will stated that the decedent was of sound mind and disposing memory. None of Mrs. Ellis' heirs were present when she executed this last will and testament. She had no conversations with them on January 6, 1989.

On October 17, 1989, Imogene Green was granted power of attorney over Mrs. Ellis. The decedent was admitted to the hospital on October 30, 1989, where Dr. Stephen J. D'Amico diagnosed her as suffering from cerebrovascular accident, transient ischemic attacks, senile dementia with delirium, and nutritional deficiency. After years of deteriorating health, Mrs. Ellis died on May 28, 1999.

At the core of this controversy is the decedent's sale of certain real property to Ellis Funeral Home, Inc. on January 1, 1989. Mrs. Ellis specified in her will that the federal estate taxes and inheritance taxes be paid out of the residual estate. This required the plaintiffs rather than Clyde Green to pay these taxes.

## II. Standard of Review

In deciding whether a grant of summary judgment is proper, courts are to determine "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56.04, Tenn. R. Civ. P. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993).

Thus, the questions a court must consider in determining whether to grant or deny a motion for summary judgment are (1) whether a factual dispute exists; (2) whether that fact is material; and (3) whether that fact creates a genuine issue for trial. Id. at 214. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." Id. at 215. A disputed material fact creates a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." Id. The phrase "genuine issue" refers exclusively to factual issues and not to legal conclusions that could be drawn from the facts. Id. at 211.

The party seeking summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Id. at 215. As

a general rule, a defendant seeking summary judgment may meet this burden in one of two ways: (1) by affirmatively negating an essential element of the plaintiff's case, or (2) by conclusively establishing an affirmative defense. Id. at 215. "A conclusory assertion that the nonmoving party has no evidence is clearly insufficient." Id. at 215.

Once the moving party satisfies its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission to the trier of fact. Id. The nonmoving party cannot simply rely upon its pleadings, but rather must set forth, by affidavit or discovery materials, specific facts showing a genuine issue of material fact for trial. Rule 56.06, Tenn. R. Civ. P.; Byrd, 847 S.W.2d at 215. The evidence offered by the nonmoving party must be admissible at trial but need not be in admissible form; the nonmovant's evidence must be taken as true. Byrd, 847 S.W.2d at 215-216.

A trial court's grant of summary judgment is a question of law and is reviewed on appeal *de novo* with no presumption of correctness. Gonzales v. Alman Constr. Co., 857 S.W.2d 42, 44 (Tenn. Ct. App. 1993). If there is a genuine dispute as to any material fact or any doubt as to the conclusions to be drawn from the undisputed material facts, we must vacate the order granting summary judgment. See Byrd, 847 S.W.2d at 211.

### III. Discussion

The trial court held that the decedent's will was properly executed. The burden of invalidating it, therefore, fell upon the plaintiffs. The trial judge decided that no issue of material fact was present and ruled in favor of the defendant. The plaintiff appealed. This case presents the following issues:

(A) was the last will and testament of Nellie K. Ellis properly executed;

(B) did Nellie K. Ellis knowingly and voluntarily execute her last will and testament with the requisite testamentary capacity;

(C) was Nellie K. Ellis unduly influenced by anyone when she executed her last will and testament; and

(D) is the train of circumstances surrounding the execution of Nellie K. Ellis' last will and testament suspicious enough to justify jury consideration?

### A. Proper Execution and Burden of Proof

The record in this case shows that the will was properly executed pursuant to Tenn. Code Ann. § 32-1-101, *et seq.* Therefore, the contestants must present adequate facts to invalidate the will by undue influence or lack of testamentary capacity.

"In a will contest the initial burden is upon the proponent of the will to show its prima facie validity and this is a question for the determination of the court." Taliaferro v. Green, 622 S.W.2d 829 (Tenn. Ct. App. 1981), overruled on other grounds by Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1995).

"Upon the proponent's satisfactory showing prima facie validity, the burden shifts to the contestant and, generally, the burden is upon the contestant to show facts relied upon to void the will." Id.

The proper execution of a will requires compliance with Tenn. Code Ann. § 32-1-104 which states:

"The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1)   The testator shall signify to the attesting witnesses that the instrument is the testator's will and either:
(A)   The testator sign;
(B)   Acknowledge the testator's signature already made; or
(C)   At the testator's direction and in the testator's presence have someone else sign the testator's name; and
(D)   In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.
(2)   The attesting witness must sign:
(A)   In the presence of the testator; and
(B)   In the presence of each other."

Once the proponents establish a will's due and formal execution, the contestants have the burden of proving lack of testamentary capacity or undue influence. In re Estate of Elam, 738 S.W.2d 169 (Tenn. 1987); In re Estate of Rhodes, 436 S.W.2d 429 (Tenn. 1968). The presence of an attestation clause in a will creates a presumption that the instrument was properly executed. Jackson v. Patton, 952 S.W.2d 404, 406-407 (Tenn. 1997). The contestant must rebut that presumption by carrying the burden of proving the will was not executed according to the formalities of the statute. Id.

In the case before us the decedent executed her last will and testament in the presence of two witnesses, her attorney Walter S. Clark Jr. and Judith Crockett. Attorney Clark read the will aloud to the decedent before she signed it. The will contained an attestation clause which both witnesses signed in the presence of each other. The record before us does not dispute the fact that the execution of this will complied with Tenn. Code Ann. § 32-1-104.

The appellants attempted to disqualify the attorney as an attesting witness. They did this by making unsubstantiated allegations concerning his credibility and professional skills. Mere

-4-

allegations of the type found in this record are not sufficient to disqualify the attorney as an attesting witness. The role of an attesting witness during the execution of a will is to attest to the mental capacity of the testator. Allegations of prior questionable conduct by themselves are not sufficient to challenge the ability of a witness to attest to the execution of a will.

It is this court's opinion that the plaintiffs have not presented a "clear and satisfactory proof of lack of due execution." Whitlow v. Weaver, 478 S.W.2d 57, 60-61 (Tenn. Ct. App. 1970). Since they have not provided this proof, the plaintiffs' motion for summary judgment is dependant upon the remaining issues of lack of testamentary capacity or undue influence.

### B. Testamentary Capacity

The trial court was correct in ruling that Nellie K. Ellis was of sound and disposing mind at the time she executed her will.

Under Tennessee law, a testator is presumed to have the capacity to execute a will. Taliaferro v. Green, 622 S.W.2d at 835. (Tenn. Ct. App. 1981), overruled on other grounds by Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1995). The burden of proof in a will contest, therefore, is always upon the contestant to demonstrate suspicious circumstances or lack of testamentary capacity at the time of execution of the testamentary document. Keasler v. Estate of Keasler, 973 S.W.2d 213, 217 (Tenn. Ct. App. 1997). "The right of contestant to have the issue of mental capacity submitted to the juries in will contests must rest upon substantial or material evidence at the time the will was made and not upon 'scintilla' or a 'glimmer' of evidence." Jones v. Sands, 292 S.W.2d 492, 496 (Tenn. Ct. App. 1954). "By 'material' evidence is meant evidence that is material to the particular question in controversy upon the issues joined, which must necessarily enter into the consideration of the controversy, and by itself or in connection with other testimony be determinative of the case." Id. at 497. "By 'substantial evidence' is meant 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." Id.

To prove a lack of mental capacity, the plaintiffs have submitted Dr. Stephen J. D'Amico's testimony that Mrs. Ellis suffered from senile dementia when he examined her in October of 1989. However, this examination and diagnosis occurred almost ten months after she executed her will. "Evidence of a decedent's mental state before or after execution is relevant only when said evidence is not too remote in time ......." Keasler v. Estate of Keasler, 973 S.W.2d at 218 (Tenn. Ct. App. 1997).

Dr. D'Amico was not with the decedent when she executed her will on January 6, 1989. Likewise, the examination and dementia diagnosis ten (10) months after the will was executed is too remote in time and does not provide more than a "glimmer" of evidence that Mrs. Ellis lacked testamentary capacity. In Street v. Waddell, 3 S.W.3d 504 (Tenn. App. 1999), the court held that evidence to show that a person suffered from senile dementia before she executed her will was not enough to prove her mental incompetence. It is this court's position that Dr. D'Amico's testimony

is not sufficient evidence to shift the burden of proving mental capacity to the proponent of the will.

The plaintiffs also rely on Juantia Sircy's testimony that Clyde Green stated in 1986 and 1987 that Nellie K. Ellis was not able to manage the books and records of Ellis Funeral Home.  Being able to manage the books and records of a funeral home is not the standard in regard to testamentary capacity.  The "incapacity to transact business does not necessarily carry with it incapacity to make a will." Green v. Higdon, 870 S.W.2d 513 (Tenn. App. 1993), citing Bruster v. Etheridge, 48 Tenn. App. 267, 345 S.W.2d 692 (1961).  "(L)ess mental capacity is required to make a will than to carry on business transactions generally." Farmers Union Bank of Henning v. Johnson, 27 Tenn. App. 342, 181 S.W.2d 369 (1944).

It is this court's opinion that the decedent's inability to transact the funeral home's business affairs is insufficient to show that she lacked the testamentary capacity at the time she executed her will.  Hearsay testimony in the deposition of one of the will's contestants fails to build an arena in which the parties may dispute testamentary capacity.  This Court holds, therefore, that the decedent had sufficient  testamentary capacity on the day she executed her last will and testament.

## C.  Undue Influence

The proponent Clyde Green and his wife, Imogene, shared a forty (40) year friendship with the decedent.  During this time period both of them worked with Mrs. Ellis to build up the business of Ellis Funeral Home.  This friendship and working relationship may well have influenced Nellie K. Ellis' decision to bequeath the funeral home corporation to Clyde Green.  The contestants have not provided enough evidence, however, to prove that Clyde Green, as the beneficiary, unduly influenced her decision.

"Under these facts the contestants have not made out a case of undue influence for it is not influence that vitiates a will, but undue influence; and it must to the extent of depriving the testator of his free agency, and amount to moral coercion which he is unable to resist." Union Planters National Bank v. Inman, 588 S.W.2d 757 (Tenn. Ct. App. 1979).  In Parham v. Walker, 568 S.W.2d 622 at 624, the court states, "For the doctrine of undue influence to be applicable, there must be a confidential relationship whereby one party is in a position, because of the confidential relationship to exercise undue influence over the mind and will of the other."  "The burden is upon the one who alleges the existence of such a confidential relationship to prove it.  Id.  "Once its existence is proven, undue influence is presumed and the recipient must prove an exception to the presumption by carrying the burden of showing the fairness of the transaction and the non-existence of the presumed undue influence.  If the recipient fails in that burden, the transaction is presumed void. Id.

To sustain the claim that Mr. Green unduly influenced Mrs. Ellis' decision to bequeath Ellis Funeral Home, Inc. to him, the plaintiffs must prove that (1) Mr. Green had a confidential relationship and (2) that he coerced her to make the decision.  "The core definition of a confidential

relationship requires proof of dominion and control." Matlock v. Simpson, 902 S.W.2d at 385-86 (Tenn. 1995). A confidential relationship is any relationship which gives one person dominion and control over another. See Mitchell v. Smith, 779 S.W.2d 384-389 (Tenn. Ct. App. 1989).

The record in this case shows the plaintiffs have not established that Clyde Green dominated or controlled the decedent or her testamentary decisions in such a way that would amount to moral coercion. Neither Mr. Green nor his wife held a superior position over the decedent which caused her to give in to their wishes. There are no indications that the decedent was being coerced into leaving the funeral home to Clyde Green. The plaintiff has not established undue influence that is required by this type of claim.

The plaintiffs argue that Imogene Green's appointment as power of attorney for the decedent creates a confidential relationship between her husband Clyde Green and Mrs. Ellis. This court disagrees. It is important to note that Mrs. Green was not given this power until October of 1989 which was after Mrs. Ellis executed her will. The issue of undue influence should "be decided by the application of sound principles and good sense to the facts of each case." Halle v. Summerfield, 199 Tenn. 445, 454, 287 S.W.2d 57, 61 (1956). "When an unrestricted power of attorney is executed but has not been exercised, good sense dictates that there exists no dominion and control and therefore no confidential relationship based solely on the existence of the power of attorney." Childress v. Currie, 74 S.W.3d 324 (Tenn. 2002), distinguishing Mitchell and Matlock. Common sense dictates that the proponent could not have qualified through his wife as having a confidential relationship because the power of attorney was not effective until after the decedent executed her will.

The plaintiffs have not provided material or substantial evidence that the defendant unduly influenced the decedent. We hold that as a matter of law no dispute exists regarding undue influence.

### D. Suspicious Circumstances

The plaintiffs rely on Ballew v. Ballew, 309 S.W.2d, 125 (Tenn. Ct. App. 1957). They argue that any fact may be proved by direct evidence, circumstantial evidence, or a combination of the two. They allege that a well connected train of circumstances may be more convincing than the positive evidence of a witness, and that suspicious circumstances can be relied upon as circumstantial evidence. Id.

Suspicious circumstances suggested by the plaintiff as applicable to this case are (1) a confidential relationship between the testator and the beneficiary, (2) the testator's mental of physical deterioration, and (3) the beneficiary's active involvement in procuring a will. Mitchell v. Smith, 779 S.W.2d 384 at 391 (Tenn. Ct. App. 1989). This court disagrees with the plaintiffs' position.

"Whether the suspicious circumstances in procuring a will relied upon by the contestants of the will are sufficient to invalidate the will should be decided by the application of sound principles

and good sense." In re Estate of Maddux, 60 S.W.3d 84, 89 (Tenn. Ct. App. 2001). The range of facts which may be relevant to the question of whether suspicious circumstances exist is very broad.

> "It is generally held that upon such issues every fact and circumstance, no matter how little its probative value, which throws light upon these issues, is admissible. The range of inquiry may cover, not only the provisions of the will itself, and the circumstances surrounding its execution, but also the mental condition of the testator, the motive and opportunity of others to influence him unduly, his relations with persons benefitted by or excluded from the will, and the acts and declarations of such persons. Although none of these matters standing alone may be sufficient to establish the issues, yet taken together they may have that effect."

Mitchell, 779 S. W. 2d at 388 (quoting Hager v. Hager, 17 Tenn. App. 143, 161, 66 S. W. 2d 250-260 (1933)). The question of whether suspicious circumstances exist is a highly fact-specific one.

The suspicious circumstances often relied upon to establish undue influence include: (1) the existence of a confidential relationship between the testator and the beneficiary; (2) the testator's physical or mental deterioration; and (3) the beneficiary's active involvement in procuring the will. In re Estate of Elam, 738 S. W. 2d at 173; Kelly v. Allen, 558 S. W. 2d 845, 848 (Tenn. 1977); Mitchell, 779 S. W. 2d at 388, Taliaferro, 622 S. W. 2d at 835-36. Tennessee courts have recognized other suspicious circumstances giving rise to undue influence. They include: (1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator. Halle, 199 Tenn. at 454-57, 287 S. W. 2d at 61-62, Mitchell, 779 S. W. 2d at 388. Although more than one circumstance must be present, "[t]he courts have refrained from prescribing the type or number of suspicious circumstances that will warrant invalidating a will on the grounds of undue influence." Mitchell, 779 S. W. 2d at 388.

Without direct evidence, the party contesting a will "...must establish the existence of more than one suspicious circumstance in order to take the undue influence issue to the jury." Halle, 199 Tenn. 445, 287 S. W. 2d 57, and Mitchell, 779 S. W. 2d 384.

This court has determined that there was no confidential relationship present in this case. Assuming for the sake of argument there was a confidential relationship, "proof of a confidential relationship alone will not support a finding of undue influence." Halle, 199 Tenn. 445, 287 S. W. 2d 57; Vantrease v. Carl, 410 S. W. 2d 629, 632 (1966). "The existence of a confidential relationship is not a suspicious circumstance *per se*. The courts are concerned not with the relationship but with the abuse of the relationship." Robinson v. Robinson, 517 S. W. 2d 202, 206 (Tenn. Ct. App. 1974).

The case of, Ballew, 309 S.W.2d 125, is distinguished from the instant case because the will in Ballew did not have an attestation clause and it was written on the back of a check book register. In Ballew the absence of an attestation clause and the unusual presence of multiple signatures by the testator were circumstances suspicious enough to warrant a jury trial. Here there is an attestation clause that was signed by two witnesses. The testator's signature is not questionable. The execution was proper and does not warrant jury consideration.

Mitchell, 779 S.W.2d 384, is distinguished in part by Childress v. Currie, 74 S.W.3d 324, (Tenn. 2002). The court in Childress held that an unexercised power of attorney did not automatically qualify as a confidential relationship. The facts are similar to the instant case. Here the proponent did not have power of attorney. His wife did. This power of attorney was not appointed until several months after the will was executed by Mrs. Ellis.

Common sense dictates that the circumstances surrounding the decedent's will are not laced with the deceit and suspicion suggested by the plaintiffs' argument. As this court pointed out in oral arguments, it is not abnormal for an attorney to go to a client's home on a holiday in order to finalize a will, especially if that attorney had represented the client and her business for several years. It is also not unusual for a testator to bequeath items to a close friend and business associate of forty (40) years. This is especially true if that friend had helped build the business and also had cared for the testator in her later years.

## IV. Conclusion

In deciding whether a grant of summary judgment is proper, courts are to determine "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56.04, Tenn. R. Civ. P.

This court has reviewed the record in this case. We have read the attorneys' briefs and listened to their oral arguments. We are unable to find a clearly disputable issue of material fact.

The decedent properly executed her will according to statutory law with two witnesses present who each signed the attestation clause. There is no substantial or material evidence that she lacked testamentary capacity when she executed her will. The proponent's behavior toward the decedent showed no indication of undue influence, and the bequeathing of the funeral home to the proponent was quite normal given the circumstances leading up to the decedent's testamentary decisions.

We find that the trial court's decision of summary judgment for the defendant was sound. This case should not be remanded for a jury trial.

The judgment of the trial court is affirmed. Costs are assessed to the appellants.

_____
JOHN J.  MADDUX, JR., SP. JUDGE