IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 13, 2013 Session

IN THE MATTER OF:   CONNOR S. L.

Appeal from the Juvenile Court for Carroll County
No. JC650011      Robert W. Newell, Judge, by Interchange

No. W2013-00668-COA-R3-JV - Filed September 16, 2013

In this second appeal of a child custody decision, Father argues that the trial court erred in naming Mother primary residential parent and in fashioning the permanent parenting plan. We conclude that the trial court did not abuse its discretion with regard to either the custody or parenting time decisions, and therefore, affirm the decision of the trial court. Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and HOLLY M. KIRBY, J., joined.

Carl E. Seely, Jackson, Tennessee, for the Appellant,  Jason L. L.

J. Neil Thompson, Huntingdon, Tennessee, for the Appellee, Amy J. W.

OPINION

**I. Background**

        This is the second appeal in this cause. In the first case, this Court remanded to the trial  court to make appropriate findings of fact and conclusions of law in  accordance with

Rule 52.01 of the Tennessee Rules of Civil Procedure.[1] *See **In re Connor S.L.***, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *7–8 (Tenn. Ct. App. Nov. 8, 2012). The majority of the proceedings at issue in this case occurred prior to the remand. According to our prior opinion:

> Appellant Jason L. L.[2] ("Father") and Appellee Amy J. W. ("Mother") have one child, Connor S.L.[3] (d.o.b. 7/31/11) ("Connor" or "the child"). Although the parties were never married, Father acknowledged Connor as his child. Mother and Father lived together for a time after the child's birth; however the relationship deteriorated and Mother moved out.
>
> On September 29, 2011, Father filed a Petition to Approve Parenting Plan in the Carroll County Juvenile Court. Juvenile Court Judge Larry Logan withdrew from the case and Judge Robert Newell of Gibson County was selected to sit by interchange. At the initial hearing on November 3, 2011, Judge Newell ordered the Department of Children's Services ("DCS") to conduct a home study, develop a safety plan, and develop a plan for Father to receive supervised visitation. The Court further ordered the parties to submit to DNA testing to establish paternity. Father subsequently filed a petition to establish paternity. Father later filed a proposed parenting plan in which he sought to be named the primary residential parent of the child.

---

[1] Rule 52.01 states:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

[2] In cases involving minor children in juvenile court, it is this Court's policy to redact names sufficient to protect the children's identity.

[3] The parties apparently disagree as the proper spelling of the child's name. Father's brief spells the child's name as "Conner," while Mother spells the child's name as "Connor." For purposes of this and our appeal prior appeal, we will refer to the child using the spelling used by Mother.

*Id.* at *1(footnotes omitted).

A hearing was held on January 20, 2012 on all outstanding issues. Both parties were living with their respective parents at the time of trial. The parents' work schedules were of particular interest in this case. Father, who has an Associates Degree in computer networking, works as a help desk analyst for a finance company. According to our prior opinion: "Father testified that he works Monday through Friday from 8:00 am to 5:00 pm and that his commute is approximately forty minutes." *Id.* at *1. Father also testified that he owns a store that requires him to work on Thursday and Friday nights and most of the day on Saturday. Father testified that he wanted to have parenting time with the child regardless of his work schedule because his parents and grandparents would be able to care for the child in his absence. With regard to Mother's work schedule, Mother testified that she works approximately thirty-five hours per week at the daycare center where the child currently attends. Thus, she is able to see the child several times a day and to breast feed the child, as needed. In addition, Mother testified that she is working towards a certification in child care that might afford her a promotion and a raise at the daycare. Because of Mother's employment with the daycare, the child is able to receive child care for free. Since the parties' separation, Mother had resided with her parents. Mother admitted, however, that she had moved several times prior to the child's birth and that she had attended several colleges without obtaining a degree.

Both parties sought to be named primary residential parent. Father asked to be awarded parenting time with the child from Sunday to Friday night, despite his testimony that he worked during the day Monday through Friday, and at night Thursday, Friday, and Saturday. Mother disagreed, and sought to be named the primary residential parent of the child, citing the fact that she was the child's primary caregiver:

> Mother, in contrast, testified that she was the child's primary caregiver from the time of his birth and that Father had not had any unsupervised visits with the child prior to the hearing, even when the parties lived together. Thus, Mother asked to be named the primary residential parent of the child. Testimony on behalf of Father admitted that neither Father nor his family had any unsupervised visitation with the child since Mother and Father parted, but alleged that the restriction was based on Mother's contention that the child should not be away from her while she was still breast feeding. However, Mother's father, Guy W., testified that his wife has taken care of the child when [the child] was ill, while Mother was at work.

-3-

*Id.* at *1–2 (footnotes omitted).

The DCS caseworker who performed the home studies and supervised Father's parenting time also testified. The DCS case worker confirmed that both home studies had shown no problems with either parent's home and recommended that no restrictions be placed on either parent's parenting time. The DCS caseworker further testified that in observing Father's interaction with the child it was "appropriate," and that he showed affection for the child. Father's mother also described Father's relationship with the child as "loving [and] caring."

According to our prior opinion:

> At the conclusion of the hearing, the trial court orally ruled that Father was the biological parent of the child, named Mother primary residential parent and awarded Father every other weekend visitation. The trial court further set Father's child support based on his income and ordered that he pay retroactive child support as of the time that the parties separated. A written order memorializing the trial court's oral ruling was entered on February 24, 2012. The order included a permanent parenting plan.

*Id.* at *1–2 (footnotes omitted).

Father appealed the trial court's order, arguing , *inter alia*, that the trial court erred in failing to consider any of the statutory factors outlined in Tennessee Code Annotated Section 36-6-106(a). We concluded that the trial court's failure to make any findings of fact or conclusions of law, as required by Rule 52.01, necessitated a remand to the trial court on the custody and parenting schedule issues.[4]

After the case was remanded to the trial court, the trial court heard argument from counsel about the effect of the remand on December 20, 2012. At this time, the trial court ruled that the existing parenting plan would remain in place until a new plan was ordered. The trial court further directed counsel for both parties to submit memoranda of law and proposed findings of fact on the custody and parenting time issues. An order memorializing these rulings was entered by the trial court on January 18, 2013. Father submitted his

---

[4] Because neither party took issue with the trial court's ruling establishing the paternity of the child, we affirmed the trial court's order in that respect. On appeal, neither party questions that Father is the biological and legal parent of the child.

proposed findings of fact and memorandum of law on January 17, 2013. In his memorandum, Father argued that he should be named the primary residential parent for the child due to Mother's history of denying him parenting time, the fact that she had moved several times in the preceding years, and that the child had spent the majority of his life in the home of paternal grandfather, rather than with Mother alone. Father also pointed out that a home study ordered to be performed by the trial court recommended no restrictions on his parenting time and that he had maintained stable and steady employment for a number of years.

Mother filed her proposed findings of fact and memorandum on January 18, 2013. Mother likewise contended that she should be named primary residential parent of the child. Mother argued that she had been the primary caregiver for the child from his birth, that she never refused to allow Father to visit with the child, and that she is able to spend more time with the child because of her more accommodating work schedule. The trial court heard oral argument from counsel on January 30, 2013.

The trial court entered a memorandum containing findings of fact and conclusions of law on January 30, 2013. According to the memorandum:

> The Court in order to abide by the remanded issues of the Tennessee Appeals Court has obtained a copy of the transcript of evidence of the hearing on Friday January 20, 2012 and required a written argument by both Attorneys and a memorandum of law submitted to the Court for consideration. The Court finds the following:
>
> * * *
>
> 2. The Juvenile Court of Carroll County adjudicated [Father] as the biological father based upon the results of paternity testing on the 20th day of January 2012 . . . .
> 3. The biological mother . . . . under [Tennessee Code Annotated Section] 36-2-303 had served as primary care giver of the child since the child was born out of wedlock and no paternity had been established by the father giving him legal standing until the present proceeding filed in this Court.
> 4. The minor child has resided with the mother the majority of his life, except for a period of about five weeks more or less when the father and mother lived together. There are no facts disputing that she had not taken greater responsibility as the primary care giver of the child performing the parenting

responsibilities relating to the daily needs of the child.

5. The Department of Children Services found both parents suitable, but did not recommend that it would be in the best interest of the Child for custody to be changed from the mother to the father.

6. The order of supervised visitation by the Court was to setup a safety plan of visitation and the plan be monitored by Department of Children Services until a hearing date on the case. It was ordered because the Court had no knowledge of either party and it was for the protection of the child until the case could be heard. It was not to be used as a decision making process by the Court unless the Department of Children Services found something that the Court should consider upon their recommendations.

7. The Court finds based upon the facts that both parents are capable of taking care of the child and have good support from relatives.

8. The father is employed currently as a help desk analyst for Portfolio Recovery Associates in Jackson Tennessee.

9. The fathers work schedule at Portfolio Associates is Monday through Friday from 8:00 a. m . until 5:00 p.m. The father is also subject to be on an on-call rotation at different times.

10. The father owns and operates a Business (a Store) in McKenzie, Tennessee. The hours of the Store being open is from Thursday from 6:00 p.m. until midnight, open on Friday from 6:00 p.m. until midnight, and open on Saturday from 1:00 p.m. until 10:00 p.m. The father is operating the Store during this time. The father has no Employees so it is reasonable to assume that he will be working at the Store during the hours the Store is open.

11. The father testified that the support for the child up until this trial date had been by the mother and her father . . . , but that he was willing to start support for the child.

12. The Mother is employed at a Day Care Center in Camden, Tennessee. She takes [the child] to work with her at the Day Care Center. [The child] is placed in the Infant Care Classroom and the mother teaches in the Pre-School Class room. The Day Care is free for [the child] and she is allowed to go into the Infant Care Classroom and breast feed [the child].

The attorneys of the parties presented different permanent parenting plans under [Tennessee Code Annotated] Section 36-6-404(b) to the Court, but considering the facts and evidence presented to the Court. The Court decided it would be in the best interest and welfare of the Child to proceed under [Tennessee Code Annotated Section 36-6-106 and develop a Shared parenting plan based on the minors best interest and availability of parents. The Shared Parenting plan order was to permit both parents the ability to enjoy maximum participation possible in the life of their child. A major concern [] evident in the testimony was with the availability of the father as evidenced in the facts 8,9,10 above. It is good to foster a good relationship between the family members, but the purpose of the Statutes is to get the biological parents participating in the life of their child. I realize that each party has good family support, but the Court feels that the father considers it to be a major responsibility of his family and grandparents. It is the intent of the Court to require that the parents raise the child. The Court used the Shared Parenting Plan as a starting point that could lead to more participation by the father in the life of his child consistent with factors set out in [Tennessee Code Annotated] Section 36-6-106 and Subdivisions (a)(l)-(10) that could be reconsidered by either party and/or the Court at a later date.

It was the decision of the Court that the best interest of the child would be better served to develop a share parenting plan to address the visitation at the present time.

There is no evidence in the record that the father is more fit than the mother such that it would be in the best interest and welfare of the child to remove the mother as the primary care giver of the child that has been exercised by her since the child was born. ([Tennessee Code Annotated Section] 36-2-303). Since the birth the child the mother has been the primary care giver taking the responsibilities relating to the day to day needs of the child and provided the support for Conner with the help of her father.

[Father] did address the factors in [Tennessee Code Annotated] Section 31-6-106, but no arguments at trial or any evidence introduced that it would be in the best interest of the child for the custody or primary care be moved from the mother to the father.

The Court finds that the evidence and factors in this custody and visitation matter as determined by the Court was better for [the child's] best interest and welfare as expressed under [Tennessee Code Annotated] 31-6-106 . The legislature expressed that the Court shall strive to create a plan where both parents can participate in a child's life. This does not mean the Court is required to award each parent equal parenting time. It does not mean that the Court should make the parenting time equal because a family member can exercise a majority of the biological parents parenting time with the child during the parents visitation period. It is to give the biological parents an opportunity to facilitate and encourage a close and continuing parent child relationship between the biological parents consistent with the best interest and welfare of the child.

It is the decision of this Court upon applying the factors and evidence with [Tennessee Code Annotated] Section 36-6-106(a) that the original Shared Parenting Plan and Court Order on the 20th day of January, 2012 was an appropriate order based on the facts and issues presented to the Court with the oral statements of the Court incorporated into the order.

Accordingly, the trial court kept in place its original ruling with regard to the parenting and child support issues. A final order incorporating the above findings was entered on January 30, 2013.

From this order, Father now appeals, raising the following issues, which are taken from his brief:

1. Whether the trial court's ruling as to custody is contrary to the preponderance of the evidence?

2. Whether the trial court, after considering the statutory factors mandated by Tennessee Code Annotated Section 36-6-106(a) to achieve the maximum participation possible for each parent in the child's life, has reached a decision not supported by the evidence?

3. Whether the trial court's ruling is in the best interest of the child or supported by the evidence?

From our review of the parties' briefs, there are two dispositive issues:

1. Whether the trial court erred in concluding that it was in the child's best interest to name Mother primary residential parent?

2. Whether the trial court erred in concluding that the ordered parenting plan best achieved the maximum participation possible for each parent in the child's life, in accordance with the child's best interest?

Based on the following analysis, we conclude that the trial court did not err in naming Mother the child's primary residential parent or in fashioning the permanent parenting plan.

## II. Analysis

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Tenn. R. App. P. 13(d). In applying the *de novo* standard, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody and that the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct.12, 2010) (citing *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." *Hyde*, 2010 WL 4024905, at *3 (citing *Johnson*, 169 S.W.3d at 645). Accordingly, appellate courts review a trial court's decision regarding which parent to name as the primary residential parent for an abuse of discretion. *See Fulbright v. Fulbright*, 64 S.W.3d 359, 365 (Tenn. Ct. App. 2001) (citation omitted); *see also Porter v. Porter*, No. M2012-00148-COA-R3-CV, 2013 WL 313838, at *14 (Tenn. Ct. App. 2013) (Kirby, J., concurring) (declining to reverse the trial court's ruling only because of the "high standard" required under abuse of discretion review). "[A] trial court's decision regarding custody or visitation should be set aside only when it 'falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Curtis v. Hill*, 215 S.W.3d 836, 839 (Tenn. Ct. App. 2006) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). Thus, it is not within the province of appellate courts to tweak a parenting plan in hopes of achieving a better result than the trial court. *See Eldridge*, 42 S.W.3d at 88. As our Supreme Court has explained:

> When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes

that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving [parental responsibilities], to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution. *See* ***State v. Franklin***, 714 S.W.2d 252, 258 (Tenn. 1986) ("appellate court should not redetermine in retrospect and on a cold record how the case could have been better tried"); *cf.* ***State v. Pappas***, 754 S.W.2d 620, 625 (Tenn. Crim. App. 1987) (affirming trial court's ruling under abuse of discretion standard while noting that action contrary to action taken by the trial court was the better practice); ***Bradford v. Bradford***, 51 Tenn. App. 101, 364 S.W.2d 509, 512–13 (1962) (same). An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record. *See, e.g.,* ***State ex. rel Vaughn v. Kaatrude,*** 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

***Eldridge***, 42 S.W.3d at 88. The trial court's discretion, however, is not unbounded. ***Hogue***, 147 S.W.3d at 251 (citation omitted). The court must base its decision upon proof and apply the appropriate legal principles. ***Id.*** (citation omitted).

"By statute as well as case law, the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." ***Burden v. Burden***, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007) (quoting ***Cummings v. Cummings***, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *5 (Tenn. Ct. App. Oct. 15, 2004)). "In choosing which parent to designate as the primary residential parent for the child, the court must conduct a 'comparative fitness' analysis, requiring the court to determine which of the available parents would be comparatively more fit than the other." ***Chaffin v. Ellis***, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006) (citing ***Bah v. Bah***, 668 S.W.2d 663, 666 (Tenn. 1983)). "In engaging in this analysis, the court must consider the factors set out in Tennessee Code Annotated § 36-6-106(a)." ***Ellis***, 211 S.W.3d at 286 (footnote omitted). While "there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," the statute nevertheless "requires the trial court to consider

all the applicable factors."[5] ***Murray v. Murray***, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at \*8 (Tenn. Ct. App. Sept.28, 2010). Moreover, this Court has encouraged trial courts to "be as precise as possible in making child custody findings" in order to facilitate meaningful appellate review. ***In re Elaina M.***, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at \*8 (Tenn. Ct. App. Oct. 25, 2011).

Father argues that the evidence in the record does not support the trial court's decision that naming Mother the primary residential parent or allowing Mother to spend significantly more time with the child than Father is in the child's best interest. We first consider whether the trial court erred in finding that it was in the child's best interest to name Mother the primary residential parent.

## A. Primary Residential Parent

To determine which parent should be named primary residential parent, we will consider each applicable factor contained in Tennessee Code Annotated Section 36-6-106(a), along with the trial court's findings and the evidence contained in the record.

> (1) The love, affection and emotional ties existing between the parents or caregivers and the child;

The trial court did not make a specific findings as to this factor. Father points to his testimony at trial that he desired to foster and maintain a strong relationship with the child and the testimony of the DCS case worker, who noted that Father and the child have an affectionate relationship. Father also points to testimony from his mother that Father is a "loving, caring Father." Mother, on the other hand, argues that because Father's parenting time with the child up until the time of trial was limited and supervised, she has a stronger emotional connection with the child. The evidence in the record shows that both parents have an affectionate and loving relationship with the child. Accordingly, this factor weighs in favor of neither parent.

> (2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

---

[5] This Court has previously expressed concern that the case law holding that trial judges need not articulate the factors pursuant to Tennessee Code Annotated Section 36-6-106(a) appears to conflict with the intent of Tennessee Rule of Civil Procedure 52.01. *See **In re Elaina M.***, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at \*8 n.13 (Tenn. Ct. App. Oct. 25, 2011).

The term "caregiver" means "the person or persons or entity or entities responsible for providing for the supervision, protection and basic needs of the child." Tenn. Code Ann. § 37-5-501(b)(1). The trial court found that Mother was the primary caregiver of the child and that this factor weighed heavily in favor of Mother being named the primary residential parent. Father does not dispute this finding, but contends that Mother's status as primary caregiver is not dispositive because he has never been unwilling to be the primary care provider for the child or to provide the child with food, clothing, or medical care. Mother asserts, however, that prior to trial she spent the majority of the time with the child, providing the child with all necessary care. Mother further points out that Father failed to pay any child support prior to trial. We conclude that the evidence does not preponderate against the trial court's finding that this factor weighed in favor of Mother.

> (3) The importance of continuity in the child's life and the length
> of time the child has lived in a stable, satisfactory environment;

This factor weighs in favor of Mother. The trial court specifically found that the child has resided almost exclusively with Mother and her family members "except for a period of about five weeks more or less when the father and mother lived together." This Court has previously held that the issues of stability and continuity for a child are "extremely important." *Hayes v. Pierret*, No. M2012-00195-COA-R3CV, 2013 WL 3346847, at *5 (Tenn. Ct. App. June 27, 2013). Father contends that this finding is in error, however, because at the time the initial petition was filed by Father, the child had resided with Father at his parent's residence more than with Mother's family. Father's argument essentially asks this Court to ignore all the events that occurred after Father filed the petition that instigated these proceedings. This Court has previously recognized that the circumstances of children and their parents change over time. *See In re Jaiden C.W.*, No. M2012-01188-COA-R3-JV, 2013 WL 1501876, at *8 (Tenn. Ct. App. April 11, 2013). Accordingly, we decline Father's invitation to consider only the events prior to the filing of the initial petition that instigated this case. This factor, accordingly, weighs in favor of Mother.

> (4) The stability of the family unit of the parents or caregivers;

The trial court specifically found that "both parents are capable of taking care of the child and have good support from relatives." Father, argues, however, that Mother is not stable because she has been unable to complete her college degree, and had moved several times prior to the birth of the child. We conclude that the evidence in the record does not preponderate against the trial court's finding. Father fails to show how Mother's failure to finish college has had any impact on the child. Mother has maintained stable employment and housing throughout the pendency of these proceedings. Mother further testified that she is attempting to earn a child care certification that could lead to a promotion and increase in pay

at the daycare where she works. In addition, she and her family have exclusively provided financial support for the child throughout these proceedings. However, Father expressed some concern regarding a possible move by Mother back to Alabama, where she had lived previously. Father admitted, however, that Mother stated that moving away from her family support was "not an option." Regardless, the trial court specifically stated that issues of relocation, if any, would be decided if Mother's alleged move ever materialized. Father also has maintained stable employment and housing since the child's birth and has a strong family support system. Accordingly, we agree with the trial court that this factor favors neither party.

(5) The mental and physical health of the parents or caregivers;

The trial court did not make a finding as to this factor. Nothing in the record suggests that either parent's mental or physical health would interfere with their ability to parent the child.

(6) The home, school and community record of the child;

The trial court did not make a finding as to this factor. The child was only five months old at the time of trial. Nevertheless, Mother argues that the child has a community record because the child is "engrained [sic] in the community, attend[s] church, and ha[s] family in the community." We conclude that due to the child's young age at the time of trial, this factor favors neither party.

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

Due to the child's age, this factor is not applicable. Therefore, it weighs in favor of neither party.

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

There were no allegations of abuse at trial. Accordingly, this factor favors neither party.

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child;

The trial court did not make a specific finding with regard to this factor. Father argues that this factor weighs in his favor because Mother has brought her boyfriend to the home while the child was there. The evidence in the record shows that Mother's boyfriend resides in Kentucky, however, and nothing in the record indicates that he either "resides in or frequents" Mother's home. In addition, nothing in the record suggests that Mother's boyfriend is a poor influence for the child. Father contends that Mother also resides with her mother ("Maternal Grandmother") , who is prescribed medication to treat bipolar disorder. Maternal Grandmother has also stated that her feelings toward the child at issue are not as strong as the feelings she has for her other grandchildren. It is undisputed that Maternal Grandmother has previously cared for the child outside Mother's presence. However, Father has failed to present any evidence that Maternal Grandmother does not properly care for the child, does not show the child appropriate love or affection, or that she would be a danger to the child. Mother likewise expressed concern over Father's step-father, with whom Father lives. Mother testified that Father once told her that step-father was abusive during his childhood. However, Mother admitted that she had not witnessed any untoward behavior with the child. Accordingly, this factor favors neither party.

> (10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order.

The trial court did not make any specific findings with regard to this factor. To be sure, Mother has taken responsibility for the majority of the past performance of parenting responsibilities in this child's life. However, Father argues that this was through no fault of his own and that his failure to parent the child was instead due to Mother's unwillingness to allow him to spend substantial time with the child. According to Father's testimony, after Mother and Father's relationship deteriorated, Mother refused to allow Father to visit with the child outside her home or her presence. Mother disputes this contention, however, and argues that parenting time was only supervised by court order pending the DCS home study.

Mother did admit, however, that she asked Father to leave when the child was hospitalized for pneumonia prior to trial. Mother submits that she only asked Father to leave because she was tired and because the nurses had indicated that everyone needed to leave the room anyway. However, the record also reflects that Mother did not interfere with any of Father's court ordered parenting time, other than when the child was ill, and that she did allow Father additional parenting time when the child was hospitalized. From our review of the record and in light of the fact that there were no allegations that Mother ever interfered with parenting time that was ordered by the Court without due cause, we conclude that this factor favors neither party.

After a review of the relevant factors, we note that the majority of the factors weigh in favor of neither party or are not applicable to the case-at-bar. Factors 2 and 3 weigh in favor of Mother. No factors weigh exclusively in favor of Father. However, this Court has held that:

> Ascertaining a child's best interests does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of [one parent or the other]. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and [his or her parents], the consideration of one factor may very well dictate the outcome of the analysis.

*In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005) (applying the above doctrine in a termination of parental rights case). In this case, we agree with the trial court that the evidence preponderates in favor of naming Mother the child's primary residential parent. Mother has been the child's primary caregiver from his birth. Thus, maintaining continuity of care would further the goal of stability in the child's life. Tennessee courts have repeatedly held that continuity and stability are "important factors" in determining which parent should be named primary residential parent. *See, e.g., In re Sidney J.*, 313 S.W.3d 772 (Tenn. May 10, 2010); *Richards v. Richards*, No. E2010-00521-COA-R3CV, 2011 WL 2135432 (Tenn. Ct. App. May 31, 2011); *In re Horner*, No. E2002-00588-COA-R3JV, 2003 WL 1452997 (Tenn. Ct. App. March 21, 2003); *King v. King*, No. M2000-00424-COA-R3-CV, 2001 WL 1035175 (Tenn. Ct. App. Sept. 11, 2001). This Court has recently stated that these two factors are entitled to "great weight" in determining which parent should be named primary residential parent. *Wood v. Wood*, No. W2012-01250-COA-R3-CV, 2013 WL 2149747, at *9 (Tenn. Ct. App. May 16, 2013). In contrast, Father's involvement with the child, though somewhat constrained by both Mother and the trial court's decisions with regard to supervised parenting time, has been limited. Regardless,

the evidence shows that even for the brief period in which Mother and Father lived together, Mother took primary responsibility for caring for the child. Therefore, we conclude that the trial court did not abuse its discretion in deciding that it was in the child's best interest to name Mother primary residential parent.

## B. Parenting Plan

Father next argues that the trial court erred in entering a parenting plan that affords Mother substantially more time with the child than Father. To support his argument, Father cites Tennessee Code Annotated Section 36-6-106(a), which states:

> In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors.

"Accordingly, Tennessee courts must now fashion custody arrangements so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests." *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012) (footnote omitted). This requirement "reflects a public policy in favor of allowing the child ample time with both parents, which is a paramount consideration in all Tennessee parenting plan decisions." *Id.* at 129 n.3. In this case, the trial court awarded Father significantly more parenting time with the child than he had been enjoying previously, but significantly less time than was awarded to Mother. From our review of the record, the trial court awarded Mother approximately 72% of the time with the child, while Father was only awarded 28% of the time, in every other weekend increments. The trial court based its decision on the parties' respective work schedules, and their ability to spend time with the child. As previously stated, the trial court found:

> The Shared Parenting plan order was to permit both parents the ability to enjoy maximum participation possible in the life of their child. A major concern of evident in the testimony was with the availability of the father as evidenced in the facts 8,9,10 above. It is good to foster a good relationship between the family members, but the purpose of the Statutes is to get the biological parents participating in the life of their child. I realize that each party has good family support, but the Court feels that the father considers it to be a major responsibility of his family and grandparents. It is the intent of the Court to require that the

parents raise the child. The Court used the Shared Parenting
Plan as a starting point that could lead to more participation by
the father in the life of his child [in the future].

Despite these findings, Father asserts in his brief that "there is no reason why each parent should not have roughly equal parenting time at this point" in the child's life. Respectfully, we disagree. The evidence in the record supports the trial court's finding that Mother is able to spend significantly more time with the child than Father due to her work schedule. In fact, Mother is able to see the child throughout the day because she works at the daycare that the child attends. Nothing in the record suggests that Father's schedule would allow him to see the child during the day in the same fashion. Father, in addition to his full-time employment, also operates a store during several of the nights that he requested parenting time with the child. Father testified at trial that his parents would be able to care for the child while he was working. Thus, the trial court was correct to conclude that Father would not actually be caring for the child during a significant portion of his requested parenting time. Based on the evidence in the record regarding the parties' work schedules, we conclude that the trial court did not abuse its discretion in fashioning the permanent parenting plan in accordance with the child's best interests.

### III. Conclusion

Based on the foregoing, the judgment of the Juvenile Court of Carroll County is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are taxed to Appellant, Jason L. L., and his surety.

_____
J. STEVEN STAFFORD, JUDGE