FILED
02/23/2017
Clerk of the
Appellate Courts



# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 15, 2017 Session

## DAVINA RUTH HART v. GABRIEL CARSE HART

### Appeal from the Chancery Court for Madison County
No. 65581     James F. Butler, Chancellor

_____

### No. W2016-01616-COA-R3-CV

_____

In this post-divorce proceeding, father appeals the trial court's reduction of his parenting time. We reverse the trial court's reduction of father's parenting time because the evidence does not support the trial court's modification of the parenting plan and reinstate the previous parenting plan.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and Arnold B. Goldin, J., joined.

Christie Hopper, Jackson, Tennessee, for the appellant, Gabriel Carse Hart.

W. Taylor Hughes, Jackson, Tennessee, for the appellee, Davina Ruth Hart.

### MEMORANDUM OPINION[1]

#### BACKGROUND

Because the only issue appealed before this Court is the trial court's reduction of Defendant/Appellant Gabriel Carse Hart's ("Father") parenting time, we will confine our recitation of the facts to those relevant to the issue presented. Plaintiff/Appellee Davina

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Ruth Hart ("Mother") and Father were married on May 27, 2000, with one minor child ("the child") born of the marriage in 2007.[2] Mother filed a complaint for absolute divorce on July 29, 2008. On November 4, 2008, the trial court entered the final decree of divorce, incorporating the marital dissolution agreement ("MDA") and the agreed permanent parenting plan. Under the November 2008 parenting plan, Mother was designated as the primary residential parent and received 317 days per year of parenting time, and Father received 48 days of parenting time with the child in Jackson, Tennessee. The November 2008 parenting plan also provided for joint decision-making with respect to educational decisions; however, Mother was allowed to make decisions regarding non-emergency health care, religious upbringing, and extracurricular activities. Prior to the entry of the final decree and the parenting plan, Mother and the child moved to Plano, Texas.[3]

Mother filed a petition to modify the permanent parenting plan in the trial court on or about October 22, 2012. The parties participated in and completed mediation on or about January 17, 2013. An agreed parenting plan modifying the November 2008 parenting plan was entered after mediation on May 3, 2013, providing Mother with 280 days of parenting time and Father with 85 days. Specifically, the May 2013 parenting plan provides the following: (1) Mother would care for the child day-to-day except for specific weekends where "Father [would] have parenting time . . . in Texas each year"; (2) Father was allowed "one extra weekend per month [in Texas]" if Father provided Mother with appropriate notice; (3) the parties divided parental time during major holidays;[4] (4) Father was allowed telephone conversations with the child at least twice per week and a webcam chat with the child at least once per week; and (5) major decisions in the child's life were to be made jointly by the parties. On May 10, 2013, a consent order was entered modifying the permanent parenting plan and incorporating by reference the above plan.

The parties again engaged in mediation on October 21, 2015, in anticipation of Father's petition to modify the May 2013 order; however, this mediation attempt was unsuccessful. Thereafter, on November 4, 2015, Father filed a motion for contempt and petition to modify the parenting plan by increasing his time with the child and allowing the child to use a cellphone provided by Father to facilitate phone calls with Father. Therein, Father asserted that Mother violated the May 2013 order by: (1) unreasonably withholding visitation; (2) impeding telephone and webcam conversations; (3) failing to consult Father on educational decisions, extracurricular activities, and non-emergency

---

[2] In an attempt to protect the minor child's privacy in this case, we have chosen to omit the child's name from this Opinion and refer to "the child." Additionally, we have tried to omit any other information that could be used to identify the child.

[3] Mother remarried in 2014, and the child and Mother are currently living with Stepfather and two stepbrothers in Texas.

[4] It is unclear whether Father exercised visitation with the child in Tennessee or Texas during these major holidays.

healthcare decisions; and (4) failing to send proof of income. Mother filed an answer to the petition on January 3, 2016, denying all material allegations. Father subsequently filed a response on February 16, 2016, and a proposed parenting plan on February 17, 2016. Father's proposed parenting plan sought to increase his parenting time to 113 days, allocating 252 days to Mother. Father also requested that he be allowed to provide the child with a cell phone to facilitate the telephone calls allowed under the May 2013 plan. Mother, however, never filed a proposed parenting plan nor sought any changes to the residential parenting schedule prior to the scheduled hearing.

A hearing was held on February 19, 2016. According to the amended statement of the evidence filed on October 28, 2016 and approved by the trial court on October 31, 2016, only Father and Mother testified. At the time of the hearing, Father was a schoolteacher in Tennessee, while Mother was a school nurse in Texas.

Both parties testified at length with respect to the difficulties they have encountered with the May 2013 parenting plan, such as the parents' inability to cooperate in the scheduling of phone calls and web cam conferences, the decision-making for the child's educational and medical needs, and the furnishing of tax return information.

In addition to testimony addressing the above issues, Father testified that he and the child have a very close relationship. Father further testified that the child has communicated her desire to spend more time with him in Tennessee. As a result, Father sought additional parenting time in the summer and whenever he makes a special trip to Texas to participate in the child's extra-curricular activities. In addition, Father testified as to his willingness to work with Mother in order to accommodate any of her planned family summer vacations if he were awarded more parenting time with the child in the summer. Furthermore, Father testified that he is a very active dad who is willing to do whatever is necessary so that he would not go more than three weeks without visiting with the child.

Mother did not dispute the closeness of the child's relationship with Father or Father's active role in the child's life. Rather, Mother essentially testified that the best interest of the child requires a more rigid parenting plan than the current parenting plan. Mother further testified that, because she works as a nurse in the same school system as the child, her work schedule coincides with the child's school schedule. As a result, Mother desired to spend more time with the child when they are on school breaks together.

After taking the matter under advisement, the trial court entered an order on June 30, 2016. As is relevant to this appeal, the trial court found that the child and Father have a good relationship and Father "makes special time to come to Texas . . . to [en]sure that he has his parenting time[] even though it is a physical inconvenience." The trial court further found that a material change in circumstances had occurred since the entry of the

- 3 -

May 2013 plan, necessitating a different plan. In addition, the trial court found that Father's parenting time should not interfere with the child's normal and usual activities any more than necessary and that Mother is entitled to spend some time with the child when she is on school vacations. The trial court ordered that Mother be allowed to make major life decisions for the child and denied Father's request to provide the child with a cell phone. Moreover, the trial court reduced Father's visitation to 68 days per year by reducing: (1) Father's parenting time during Father's fall, spring, and summer school breaks; and (2) Father's Texas visitations to only four times per year. However, the trial court increased Father's telephone communication with the child to four times per week with at least one of those conversations to be accomplished through teleconferencing. Lastly, the trial court found that neither party was guilty of contempt. Father appeals.

## ISSUE

Father raises the following issue for our review:

Did the trial court abuse its discretion in reducing Father's parenting time by removing Father's Spring Break and Fall Break parenting time and reducing Father's summer parenting time even though the parenting times were not objected to by Mother, no evidence was entered regarding these times or against these issues, and the evidence preponderates against the reduction of Father's parenting time?

## STANDARD OF REVIEW

In custody and visitation decisions, this Court reviews a trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). Moreover, we are reluctant to second-guess a trial court's determination regarding custody and visitation because of the broad discretion given trial courts in matters of child custody, visitation, and related issues. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings," appellate courts "are reluctant to second-guess a trial court's decisions." *Hyde v. Amanda Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010) (citing *Johnson v. Johnson*, 169 S.W.3d 640, 645 (Tenn. Ct. App. 2004)). Accordingly, trial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case. *Parker*, 986 S.W.2d at 563.

Furthermore, it is not within the province of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial

court." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 88 (Tenn. 2001). As our Supreme Court has explained:

> When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving [parental responsibilities], to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution. *See* ***State v. Franklin***, 714 S.W.2d 252, 258 (Tenn. 1986) ("[A]ppellate court should not redetermine in retrospect and on a cold record how the case could have been better tried[.]"); *cf.* ***State v. Pappas***, 754 S.W.2d 620, 625 (Tenn. Crim. App. 1987) (affirming trial court's ruling under abuse of discretion standard while noting that action contrary to action taken by the trial court was the better practice); ***Bradford v. Bradford***, 51 Tenn. App. 101, 364 S.W.2d 509, 512–13 (1962) (same). An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record. *See, e.g.*, ***State ex. rel Vaughn v. Kaatrude***, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

***Eldridge***, 42 S.W.3d at 88. The trial court's discretion, however, is not unbounded. ***Hogue v. Hogue***, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004) (citation omitted). The court must base its decision upon proof and apply the appropriate legal principles. ***Id.*** (citation omitted).

## DISCUSSION

In order to modify an existing parenting plan, a trial court must engage in a two-step analysis. First, the court must determine whether a material change in circumstances has occurred since the entry of the prior order. Tenn. Code Ann. § 36-6-101(a)(2)(B). Pursuant to Tennessee Code Annotated section 36-6-101(a)(2)(B), the party seeking modification has the burden of proving a material change in circumstances. Second, upon finding that a material change in circumstances has occurred, the trial court must consider the factors enumerated in Tennessee Code Annotated section 36-6-106(a) and make a determination whether it is in the child's best interests to modify the current custody arrangement. ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002). The trial court is directed to consider a variety of factors in determining the child's best interest. *See* Tenn. Code Ann. § 36-6-404(b) (setting forth various factors the trial court must consider in fashioning a parenting schedule). This Court has previously held that, while "there is no statutory requirement that the court list every applicable factor along with its conclusion

as to how that particular factor impacted the overall custody determination," the statute nevertheless "requires the trial court to consider all the applicable factors." **Murray v. Murray**, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010). Moreover, this Court has encouraged trial courts to "be as precise as possible in making child custody findings" in order to facilitate meaningful appellate review. **In re Elaina M.**, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011).

We note that the determination of whether a "material change of circumstances" has occurred requires a different standard depending upon whether a parent is seeking to modify custody (i.e., change the primary residential parent) or modify the residential parenting schedule. Tenn. Code Ann. § 36-6-101(a)(2)(B)–(C); *see also* **Pippin v. Pippin**, 277 S.W.3d 398, 406–07(Tenn. Ct. App. 2008) (citing **Massey-Holt v. Holt**, 255 S.W.3d 603 (Tenn. Ct. App. 2007)). As previously stated by this Court, "a 'change in circumstance' with regard to the parenting schedule is a distinct concept from a 'change in circumstance' with regard to the identity of the primary residential parent." **Massey-Holt**, 255 S.W.3d at 607. Subsection (a)(2)(C) establishes a lower threshold for modification of a residential parenting schedule. **Scofield v. Scofield**, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007) (citing **Rose v. Lashlee**, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2, n.3 (Tenn. Ct. App. Aug. 18, 2006) (holding that Tennessee Code Annotated section 36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change of circumstances")). Here, Father seeks to modify the residential parenting schedule rather than to modify custody. Thus, the threshold showing for a material change in circumstances is much lower. Nevertheless, neither party disputes the trial court's finding that a material change in circumstances occurred in this case, and, as a result, that the trial court was entitled to modify its previous parenting plan. Instead, Father essentially argues that the trial court's reduction of his parenting time was not supported by the evidence nor was it in the child's best interest. After reviewing the record in this case, we conclude that insufficient evidence was introduced to support the action of the trial court.

As an initial matter, we note that the record does not support a finding that Mother ever actually requested an increase in her parenting time prior to the trial on this cause. First, Mother never submitted a permanent parenting plan. Her failure to do so violates Tennessee Code Annotated section 36-6-405(a), which requires that a proposed parenting plan be filed with the response to the petition for modification.[5] "Failure to comply by a party may result in the court's adoption of the plan filed by the opposing party if the court finds such plan to be in the best interests of the child." Tenn. Code Ann. § 36-6-

---

[5] We note that Father is not entirely blameless. Here, Father also failed to file a proposed parenting plan concurrently with his modification petition, in violation of section 36-6-405(a). In response to Mother's argument that his petition was deficient, however, Father filed a proposed parenting plan, albeit only two days before trial. In contrast, Mother has not provided any explanation with respect to her continued failure to submit a proposed parenting plan either before or during trial.

404(c)(3). In this case, the trial court never addressed the effect of Mother's failure to file a proposed parenting plan. This Court has previously held, however, that the failure to file a proposed parenting plan can be fatal to a parent's modification request. *See, e.g.*, ***Crum v. Fillers***, No. E2011-01885-COA-R3-CV, 2012 WL 12044654, at \*6 (Tenn. Ct. App. Oct. 11, 2012) (affirming the trial court's modification of the parenting plan as mother requested because, among other considerations, father never submitted a proposed parenting plan); ***Massey-Holt v. Holt***, 255 S.W.3d 603, 611–12 (Tenn. Ct. App. 2007) (concluding that the evidence preponderates against the trial court's modification of the parenting plan designating father to be the primary residential parent because, *inter alia*, father never submitted a proposed parenting plan). *But see* ***Johnson v. Johnson***, No. E2012-02618-COA-R3-CV, 2013 WL 5373064, at \*4 (Tenn. Ct. App. Sept. 23, 2013) (noting in dicta that, even if father's proposed parenting plan had been the only one before the trial court, the trial court was allowed to enter its own parenting plan provided that the plan served the child's best interest).

Mother's desire for increased parenting time with the child is also not reflected in her pleadings. While Mother indicated at the hearing that she wished to spend more time with the child when they are both on school breaks, Mother failed to seek an increase in parenting time in her response to Father's petition or by filing her own counter-petition for a modification of parenting time. Rather, Mother simply denied that Father was himself entitled to any relief in her pleading. It is well-settled law in Tennessee that a judgment is void where it is rendered "wholly outside of the pleadings, and no binding consent thereto is shown in the record." ***Andrews v. Fifth Third Bank***, 228 S.W.3d 102, 107 (Tenn. Ct. App. 2007) (citing ***Gentry v. Gentry***, 924 S.W.2d 678, 680 (Tenn. 1996)).[6] "A trial court commits error when it bases a decision, even in part, upon conclusions concerning an issue that was not raised in the pleadings or tried by consent." ***Solima v. Solima***, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at \*7 (Tenn. Ct. App. July 30, 2015) (citing ***Rawlings v. John Hancock Mut. Life Ins. Co.***, 78 S.W.3d 291, 302 (Tenn. Ct. App. 2001)). Mother appears to assert that this issue was tried by consent because she testified that a more structured visitation schedule allowing her more time on school breaks would be in the child's best interest. Because we have only a statement of the evidence of the trial court proceedings, it is impossible to discern whether Father objected to Mother's testimony regarding her desire for more parenting time or whether Mother's request for additional time was tried by consent. *See* ***Howard v. Howard***, No. E2015-00908-COA-R3-CV, 2016 WL 3910262, at \*3–4 (Tenn. Ct. App. July 13, 2016) (concluding that, despite the mother's failure to specifically file pleadings seeking an increase in parenting time, the father had sufficient notice because mother submitted a

---

[6] The Tennessee Supreme Court in ***Keisling v. Keisling***, 92 S.W.3d 374 (Tenn. 2002), specifically held that in order to modify custody, due process required, at a minimum, a pleading filed by a party in order for custody of a child to be changed. *Id.* at 376. No Tennessee cases have ever specifically held that the ***Keisling*** rule is applicable in the modification of parenting time situation.

proposed parenting plan with her answer to father's petition prior to trial reflecting her desired increase).

In any event, the record simply does not contain sufficient evidence to support the trial court's reduction of Father's parenting time. From our review of the record, the evidence presented at trial mostly related to the parties' problems with the May 2013 order. Although the trial court acknowledged that "Father presented a proposed [p]arenting [p]lan" and that "Father [has] a good relationship" with the child, the trial court inexplicably concluded that "Mother is . . . entitled to sufficient time during the year to have regular time with the child when the child is not in school" when no evidence was presented to justify such a conclusion. To the contrary, the trial court was presented with evidence, and ultimately found, that Father goes to great lengths to see the child, and no evidence was presented to contradict the close relationship between Father and the child or Father's proposed additional time with the child. While Mother did testify that she desired more time with the child, nothing in the record suggests that the child's well-being was in any way impaired by the visitation the child already enjoys with Father. Accordingly, the only evidence in favor of Mother's purported request for more time with the child during the child's school breaks is Mother's stated desires.

Even assuming, arguendo, that sufficient evidence exists to support a finding that increasing Mother's parenting time during the child's school breaks is in the child's best interest, the action of the trial court simply did not address this request. Instead, the reduction in Father's parenting time in many respects does not correspond with the child's school breaks and therefore is simply not supported by Mother's evidence. For example, under the May 2013 plan, Father was entitled to spend time with the child during the child's spring break on odd years. The trial court did not alter this portion of the schedule but instead completely eliminated Father's ability to have parenting time with the child in Texas during Father's fall and spring breaks. Thus, Mother's evidence, even if well-taken, does not support the change actually ordered by the trial court. In addition, the trial court severely limited Father's ability to spend additional time with the child on weekends in Texas, reducing his time from once per month to four times per year, without any testimony from Mother that this visitation was disruptive to the child's life or otherwise against the child's best interest. As such, the trial court's order in this case is not only unsupported by the evidence but also contravenes its directive under the child custody and visitation statute to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child." Tenn. Code Ann. § 36-6-106(a). As previously discussed, the trial court must base its decisions on the evidence presented and upon the proper application of the law. *See* **Hogue**, 147 S.W.3d at 251. Given the Mother's failure to seek increased parenting time, to submit a proposed parenting plan, and to present sufficient evidence showing that decreasing Father's parenting time would serve the child's best interest, we conclude that the evidence preponderates against the trial court's reduction of Father's parenting time with the child.

## CONCLUSION

Based on the forgoing, we reverse the Madison County Chancery Court's reduction of Father's parenting time with the child and remand with instructions for the trial court to reinstate only the visitation schedule as provided in the May 2013 parenting plan. Costs of this appeal are taxed to Davina Ruth Hart, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE